UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DENNIS THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-cv-00292-SRC |
| | ) | |
| GENESCO, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>Memorandum and Order</u>**

Dennis Thompson sued Genesco, Inc. in Missouri state court, alleging that Genesco unlawfully and repeatedly sent him unwanted marketing text messages in violation of the Federal Telephone Consumer Protection Act (TCPA) and its accompanying regulations.  Docs. 2, 18. After Genesco removed the case to this Court, the Court questioned whether Thompson properly has standing to maintain his lawsuit in federal court under Article III of the Federal Constitution. Doc. 30; U.S. Const. art. III.  Accordingly, the Court, sua sponte, ordered supplemental briefing to address the matter.  *Id*.  Having reviewed the parties' arguments, the Court holds that Thompson lacks Article III standing to bring his claim and remands the case to state court.

I.     **Background**

Thompson alleges that for years, Genesco has sent "numerous" and "annoying" text messages to his cell phone advertising the sale of its products.  Doc. 18 at ¶¶ 8, 13.  He insists, however, that he never gave Genesco consent to send him text messages, and that at all relevant times, his cell phone number was registered with the Federal "Do Not Call Registry" and the Missouri state "No-Call List."  *Id.* at ¶¶ 10–12.  Seeking to put an end to his repeated receipt of

those messages, Thompson sued under the TCPA, alleging violations of 47 C.F.R. § 64.1200(d), one of the TCPA's implementing regulations.  *Id.* at ¶ 34.

In particular, he alleges that Genesco failed to have a written policy, available upon demand, for maintaining an internal company "do not call" list; to train and inform its relevant personnel regarding such a list; to maintain a list of persons who request not to be called; and to keep notice of the federal "do not call" database.  *Id.* at ¶¶ 31–33.  Those failures, Thompson claims, legally bar Genesco from sending advertising text messages under § 64.1200(d).  *Id.* at ¶ 34.  For his troubles, Thompson seeks relief including damages of at least $500 per offending text message.  *Id.* at ¶ 25.

After the parties filed amended pleadings, docs. 18–19, Genesco moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  Doc. 22.  But before addressing that motion or adjudicating any part of the dispute, the Court sua sponte ordered the parties to brief a narrow question:  whether Thompson had Article III standing to bring his claim under § 64.1200(d).  Doc. 30.  Both parties filed briefs arguing that Thompson satisfied Article III standing requirements.  Docs. 31, 33.

## II.    Standard

To resolve any case on the merits, a court must have jurisdiction to do so.  That includes ensuring that the plaintiff satisfies the requirements of Article III standing.  *Pucket v. Hot Springs Sch. Dist. No. 23-2*, 526 F.3d 1151, 1156–57 (8th Cir. 2008).  Article III of the Federal Constitution, by its own terms, limits the jurisdiction of the federal courts to "Cases" and "Controversies."  U.S. Const. art. III, § 2; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992).  That limitation, along with the corpus of federal constitutional standing caselaw that it animates, rests on a "single basic idea—the idea of separation of powers."  *TransUnion LLC v. Ramirez*,

594 U.S. 413, 422 (2021) (citation omitted).  The separation-of-powers function performed by constitutional standing doctrine is simple:  it "serv[es] to identify those disputes which are appropriately resolved through the judicial process."  *Lujan*, 504 U.S. at 560 (citation and internal quotation marks omitted).  And because standing doctrine performs that critical function, it constitutes "an essential and unchanging part of the case-or-controversy requirement of Article III."  *Id.*

Since the Constitution confers powers to the federal government in piecemeal fashion, the federal courts are powerless to adjudicate disputes that do not qualify as "Cases" or "Controversies."  *See id.* at 559–60; *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340–42 (2006).  Standing doctrine enforces that case-or-controversy requirement:  it aims to ascertain that before a federal court adjudicates a dispute, a bona fide case or controversy exists.  *See DaimlerChrysler Corp.*, 547 U.S. at 342.  For that reason, if a court doubts that the requirements of standing doctrine are satisfied in a given case, it may raise and evaluate the matter at any time—even if the parties themselves have not raised the issue, or would prefer to have their dispute adjudicated in the federal system.  *See Pucket*, 526 F.3d at 1156 ("[Article III] [s]tanding . . . is a jurisdictional requirement, and thus can be raised by the court sua sponte at any time during the litigation" (citation and internal quotation marks omitted)).

At the heart of standing doctrine is a core question:  whether plaintiffs have a "personal stake" in the matter at hand.  *TransUnion LLC*, 594 U.S. at 423.  To put it in layman's terms, "plaintiffs must be able to sufficiently answer the question: 'What's it to you?'"  *Id.* (quoting Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983)).  Sufficiently answering that question requires plaintiffs to show that they satisfy three specific conditions:  that they have suffered a cognizable injury,

3

that the injury is "fairly traceable to the defendant's allegedly unlawful conduct," and that the injury is likely to be redressed by the requested relief. *California v. Texas*, 141 S. Ct. 2104, 2113 (2021) (citation and internal quotation marks omitted). Note that "standing is not dispensed in gross; rather, [a] plaintiff[] must demonstrate standing for each claim that [he] press[es]." *TransUnion LLC*, 594 U.S. at 431 (citations omitted).

## III.    Discussion

The TCPA performs two functions relevant to this case: it authorizes the Federal Communications Commission (FCC) to promulgate certain regulations enforcing the statute's provisions, and it provides a private right of action for individuals who receive unwanted messages in violation of those regulations. *See* 47 U.S.C. § 227(c). (Though that private right of action only specifically contemplates "call[s]," the parties do not dispute that it also provides a cause of action for text messages. *See* § 227(c)(5); docs. 18–19, 33.) Among the regulations promulgated by the FCC is 47 C.F.R. § 64.1200(d), which prohibits anyone from making telemarketing calls unless they first comply with enumerated requirements:

> (d) No person or entity shall initiate . . . any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> > (1) Written policy. Persons or entities making . . . calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
> >
> > (2) Training of personnel engaged in telemarketing. Personnel . . . engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
> >
> > . . .
> >
> > (6) Maintenance of do-not-call lists. A person or entity making . . . any call for telemarketing purposes must maintain a record of a consumer's request

4

> not to receive further calls.  A do-not-call request must be honored for 5 years from the time the request is made.

§ 64.1200(d).

Thompson alleges no more than one count of Genesco's wrongdoing:  that it failed to meet those "minimum standards" required by § 64.1200(d), and that it was therefore barred from sending telemarketing messages of any kind.  *See* doc. 18 at ¶¶ 29–34.  The jurisdictional question raised by the Court is whether Thompson has Article III standing to bring that claim.  Of the three required elements—injury, traceability, and redressability—the Court can readily dispense with the last:  Thompson seeks, in part, statutory damages; the TCPA allows for $500 in damages for each violation, 47 U.S.C. § 227(c)(5)(B), thus providing redressability.  But the smooth sailing ends there.  Whether the receipt of unwanted text messages constitutes a cognizable injury under the TCPA is a question the Eighth Circuit has not yet addressed.  And to the extent that Thompson seeks injunctive relief, the redressability analysis becomes "identical" to the traceability analysis.  *See Allen v. Wright*, 468 U.S. 737, 759 n.24 (1984).  Critically, that second prong of constitutional standing—traceability—simply poses an insurmountable obstacle to Thompson's § 64.1200(d) claim.

### A.  Injury

"To establish an injury in fact, a plaintiff must show an injury that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Auer v. Trans Union, LLC*, 902 F.3d 873, 877 (8th Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)) (internal quotation marks omitted).  "'Article III standing requires a concrete injury even in the context of a statutory violation,' and a plaintiff cannot 'allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.'"  *Id.* (quoting *Spokeo*, 578 U.S. at 338).  When a plaintiff alleges an intangible harm, the Court must

consider whether the alleged harm "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S. at 341.  At issue here is whether Thompson's alleged injury—the intangible harm caused by the receipt of unwanted marketing text messages—satisfies the requirements of constitutional standing.

The Eighth Circuit has yet to address this question.  It has, however, concluded that the "unwanted intrusion and nuisance" of unwanted telemarketing answering machine messages constitutes a "concrete injury" for standing purposes.  *Golan v. FreeEats.com*, *Inc.*, 930 F.3d 950, 958–59 (8th Cir. 2019).  Four other circuit courts have specifically considered whether the receipt of unwanted text messages constitutes a concrete injury, and all have concluded that it does.  *See Drazen v. Pinto*, 74 F.4th 1336, 1343–45 (11th Cir. 2023); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 461–63 (7th Cir. 2020); *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 92–95 (2d Cir. 2019); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1042–43 (9th Cir. 2017).  Courts within this district have likewise concluded that the harm caused by the receipt of unwanted text messages constitutes a concrete and particularized injury.  *See, e.g.*, *Gould v. Farmers Ins. Exch.*, 288 F. Supp. 3d 963, 968 (E.D. Mo. 2018).

In the absence of binding precedent on this question, the Court considers the question anew, emphasizing whether the receipt of unwanted marketing text messages bears "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S. at 341.  To that end, this Court finds the Eleventh Circuit's opinion in *Drazen* to be particularly persuasive.  There, the court concluded that the harm of receiving an unwanted text message qualifies as a concrete injury under Article III standing requirements because it bears a close relationship to the harm addressed by the

6

common-law tort of intrusion upon seclusion. 74 F.4th at 1345. That tort "consists of an (i) intentional intrusion (ii) into another's solitude or seclusion, (iii) which would be highly offensive to a reasonable person." *Id.* (citing Restatement (Second) of Torts § 652B (Am. L. Inst. 1965)). The *Drazen* court noted that "the undesired buzzing of a cell phone from a text message [constitutes] an intrusion into peace and quiet in a realm that is private and personal." *Id.* (quoting *Gadelhak*, 950 F.3d at 462 n.1). Accordingly, the court concluded that because of this close relationship between a common-law tort and the statutory harm enshrined in the TCPA, the unwanted receipt of marketing text messages satisfied the injury requirement of Article III standing. *Id.*

This Court agrees. Both the TCPA and the common-law tort of intrusion upon seclusion address the same kind of harm: the disruption of one's peace and privacy. Accordingly, so long as sufficiently pleaded, the receipt of unwanted marketing text messages can constitute a concrete and particularized injury. Here, Thompson alleges that he received "numerous, annoying" text messages that "caused [his] cell phone[] to make noise and vibrate" and thereby "intruded on [his] peace, privacy, and seclusion." Doc. 18 at ¶¶ 13, 15. For injury-in-fact within Article III standing, that much is enough. Thompson's alleged harm is sufficient to constitute a concrete and particularized injury.

## B. Traceability

To satisfy the traceability prong of Article III standing, a plaintiff must show that there is a "causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560. The alleged injury must, in other words, "result[] from the putatively illegal action" or the "challenged action" of the defendant. *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41 (1976); *see also Crain v. Crain*, 72 F.4th 269, 278 (8th Cir. 2023) ("[T]raceability . . . requires the

plaintiff to show a sufficiently direct causal connection between the challenged action and the identified harm" (citation and internal quotation marks omitted)).  The question in a traceability analysis is simple:  whether there is a "causal connection" between the challenged, unlawful conduct and the injury suffered.  *Crain*, 72 F.4th at 278.

The problem in this case is that on the facts alleged, Thompson cannot claim that his injury stemmed from Genesco's challenged conduct.  That conclusion becomes clear when one carefully considers each of the elements at either end of the causal connection required by standing doctrine:  injury and unlawful challenged conduct.

Start with the injury:  the nuisance caused by the repeated receipt of unwanted telemarketing messages.  Simple enough.  Now consider the unlawful challenged conduct. Thompson's original petition—the state-court equivalent of the federal complaint, filed before removal—alleged three counts of Genesco's wrongdoing:  first, "Federal Do Not Call List Violations;" second, "Telephone Consumer Protection Act Violations;" and third, "Missouri No Call List Violations."  Doc. 2 at 4, 7, 10.  Two months after removal, Thompson replaced that petition with his First Amended Class-Action Complaint.  Doc. 18.  The new complaint featured significant changes from the old.  It reduced the alleged counts of wrongdoing to one ("Telephone Consumer Protection Act Violations").  *See id.*  It added that "[t]he District Court has subject matter jurisdiction as the original petition alleged Federal Law Violations of 47 U.S.C. § 227 et seq. and 47 C.F.R. § 64.1200(d)" [sic].  *Id.* at ¶ 19; *see also* doc. 16-1 at 6 (providing a redline comparison of the original petition and amended complaint).  And it specified that in the wake of its allegations in Count I, "Defendant was thereby legally barred from sending any advertising text messages.  § 47 C.F.R.64.1200 (d)" [sic].  Doc. 18 at ¶ 34; *see also* doc. 16-1 at 9.  Recall that § 64.1200(d) requires companies to maintain standards and

8

procedures for *internal*, company-specific do-not-call lists.  Tellingly, neither the original petition nor the amended complaint makes any mention of § 64.1200(c), which is the only relevant part of federal law that requires compliance with the *federal* do-not-call list.  The thrust of Thompson's amendments is clear:  he aims to bring a § 64.1200(d) claim, challenging Genesco's conduct as unlawful because of its failure to maintain an internal do-not-call list.

To be sure, some of Thompson's allegations—for instance, that "[a]t all relevant times, Plaintiff's Cell Phone Number was registered with the [FCC's] "Do Not Call Registry;" that "[a]t all relevant times, Plaintiff's Cell Phone Number was registered with the Missouri 'No-Call List,' administered by the Missouri Attorney General;" and that "Defendant failed to timely, as required, access the Federal Do Not Call register and database," doc. 18 at ¶¶ 11–12, 33—do not appear relevant to a § 64.1200(d) claim.  But the record in this case extinguishes whatever doubts such statements may raise about the nature of Thompson's claim.  When Genesco filed its motion for judgment on the pleadings, it argued two main points:  first, that Thompson "fails to state a claim under 47 C.F.R. § 64.1200(d)," and second, that if Thompson really wanted to allege a failure to comply with the *federal* do-not-call list, he should have brought a § 64.1200(c)—not a § 64.1200(d)—claim.  Doc. 22 at 5–9.  In response, Thompson doubles down.  Doc. 23.  In a brief that makes no mention whatsoever of § 64.1200(c), he insists that he brings—and prevails on—a § 64.1200(d) claim, and *only* a § 64.1200(d) claim.  *See* doc. 23. The Court does not question that insistence; Thompson is, after all, the master of his own complaint.

Having ascertained the nature of the claim, the Court can consider the question of Article III standing (here, traceability in particular) for that claim.  "[A] plaintiff[] must demonstrate standing for each claim that [he] press[es]."  *TransUnion LLC*, 594 U.S. at 431.  The question

becomes whether Thompson has standing to bring the one "claim that [he] press[es]"—namely, a
§ 64.1200(d) claim.  To satisfy the second prong of standing for that claim, Thompson must
show a "sufficiently direct causal connection" between his receipt of unwanted messages and
Genesco's alleged failure to comply with the strictures of § 64.1200(d).  *Crain*, 72 F.4th at 278.

  To that end, Thompson directly alleges violations of at least three required "minimum
standards" imposed upon Genesco by § 64.1200(d).  *Compare* § 64.1200(d)(1)–(2), (6)
(requiring companies to keep a "written policy, available upon demand, for maintaining a do-
not-call list," train personnel "in the existence and use of the do-not-call list," and "maintain a
record of a consumer's request not to receive further calls") *with* doc. 18 at ¶¶ 30–32 (alleging
that Genesco failed to satisfy those requirements).  But an obvious, critical link between his
injury and those violations is glaringly absent:  the factual allegation that Thompson actually
asked to be put on that internal do-not-call list in the first place.  Nowhere in his Amended
Complaint does Thompson allege that he ever asked Genesco to place him on such a list, or
simply not to contact him.  *See* doc. 18.  In fact, Thompson does not allege any way in which he
would have remotely benefited from Genesco's compliance with § 64.1200(d).

  That internal list, whether extant or not, is useless to Thompson if it never would have
featured his name or phone number.  Therein lies the traceability problem:  if Thompson cannot
allege a way—any way—in which he would appear on a Genesco internal do-not-call list, then
his injury cannot be traced to Genesco's failure to maintain one.  Whether Genesco actually
maintained the required list or not, Thompson would have suffered precisely the same injury.
Section 64.1200(d) requires entities to maintain "a list of persons who *request* not to receive
[telemarketing] calls" (emphasis added), but even the best-maintained of internal do-not-call lists
would not have spared Thompson from annoying telemarketing messages if he never actually

made that request.  And if Thompson's injury does not depend on Genesco's maintenance of a compliant internal do-not-call list, there cannot be a "causal connection between the injury and the conduct complained of" (namely, the failure to maintain such a list).  *Lujan*, 504 U.S. at 560.  His injury, in other words, does not "result[] from the . . . challenged action" (or in this case, inaction) at issue.  *Simon*, 426 U.S. at 41; *see also Crain*, 72 F.4th at 278.

Without such a "causal connection," there is no traceability, and consequently, no Article III standing to challenge Genesco's alleged failure to maintain compliance with § 64.1200(d).  Nevertheless, in an effort to keep this case in federal court, Genesco points to the Eighth Circuit's decision in *In re SuperValu, Inc.* for the proposition that Thompson's allegations are sufficient to sustain his "relatively modest" burden of showing the traceability of his injury.  Doc. 33 at 6–7 (citing 870 F.3d 763, 772 (8th Cir. 2017)).  But Genesco's reading of *In re SuperValu* simply misunderstands the Eighth Circuit.  In that case, cyber criminals hacked into a grocery store's computer network, allowing them to steal the payment card information of its customers.  870 F.3d at 766.  The relevant plaintiff, David Holmes, used his credit card at an affected store and, "[s]hortly after the data breach was announced, . . . noticed a fraudulent charge on his credit card statement."  *Id.* at 767.  Although he did not specify the date on which he shopped at the store, Holmes alleged that his card information was compromised as a result of the store's security failures.  *Id.* at 772–73.  Those allegations, the Eighth Circuit held, sufficed to satisfy the traceability requirement of Article III standing:

> These . . . allegations state a causal connection . . . between the deficiencies in defendants' security system and the theft and misuse of customers' Card Information: Defendants failed to secure customer Card Information on their network; their network was subsequently hacked; customer Card Information was stolen by the hackers; and Holmes became the victim of identity theft after the data breaches.

*Id.* at 772 (citation and internal quotation marks omitted).  The plaintiff, in other words, alleged a causal connection between the suffered harm (fraudulent use of credit card information) and the store's alleged unlawful action (its failure to maintain a secure computer network).  That "general allegation" of causation satisfied the "threshold inquiry" of Article III standing.  *Id*. at 773.

There is no fair analogy of those facts to Thompson's allegations here.  Thompson alleges that he suffered a concrete harm (the receipt of unwanted telemarketing messages) and that Genesco acted unlawfully (by sending telemarketing messages without complying with the strictures of § 64.1200(d)), but he alleges no causal connection between the two.  *See* docs. 18, 31.  Unlike Holmes' allegation that the store's security failures *caused* the fraudulent charge on his credit card, Thompson does not allege that Genesco's failure to comply with § 64.1200(d) *caused* his receipt of unwanted messages.  Instead, the only causal connection Thompson alleges between his injury and Genesco's failure is that he received the unwanted messages from Genesco.  *See* doc. 18; doc. 31 at 5.  Though the *In re SuperValu* court left open the possibility that Holmes' allegations failed to clear the "higher hurdles" of adequately pleading a claim, it held that Holmes satisfied the traceability requirement of standing because he actually alleged a causal connection between his injury and the store's allegedly unlawful conduct.  870 F.3d at 773.  Here, Thompson fails to clear even that lower bar.

Though it is no more than persuasive authority, a panel of the Eleventh Circuit addressed precisely this issue in the TCPA context and resolved it much the same way this Court has addressed Thompson's standing.  *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019).  There, members of a putative class sued DIRECTV for its failure to keep and maintain an internal do-not-call list despite never having asked the company to stop calling them.  *See id.* at

1264–67.  The court found that because those plaintiffs had not asked to be put on the internal

do-not-call list, their injuries were not fairly traceable to the defendant's alleged failure to keep

and maintain such a list.  *Id.* at 1264.  The panel's analysis is precisely on point:

> [I]f an individual . . . never asked [the defendant] not to call them again, it doesn't
> make any difference that [it] hadn't maintained an internal do-not-call list.  It could
> and would have continued to call them even it if had meticulously followed the
> TCPA and FCC regulations.  For [such] individuals, then, their injury wouldn't be
> fairly traceable to the challenged action of the defendant. . . . There's no remotely
> plausible causal chain linking the failure to maintain an internal do-not-call list to
> the phone calls received by class members who never said [that] they didn't want
> to be called again. . . . [T]he receipt of a call is not traceable to [the defendant's]
> failure to comply with the internal do-not-call list regulations if the recipient
> wouldn't have been on the list in the first place even if it had been maintained.

*Id.* at 1264, 1272 (citations, emphasis, and internal quotation marks omitted).  This Court entirely

agrees.

One final note.  Genesco urges that the Court decide this case on its motion for judgment

on the pleadings.  *See* docs. 22, 33.  But that argument puts the cart before the horse:  such a

decision would constitute a judgment on the merits, which the Court is powerless to enter in the

absence of standing.  *See McGowen, Hurst, Clark & Smith, P.C. v. Com. Bank*, 11 F.4th 702, 708

(8th Cir. 2021) ("The existence of a plaintiff's Article III standing is a jurisdictional prerequisite,

and we will not reach the merits if the plaintiff does not have standing").  Because Thompson

does not satisfy the requirements of Article III standing, the Court denies Genesco's motion for

judgment on the pleadings as moot and remands this case to state court for further proceedings.

*Hillesheim v. Holiday Stationstores, Inc.*, 900 F.3d 1007, 1010 (8th Cir. 2018) (holding that "[i]f

it turns out after removal that a plaintiff lacks standing to bring a claim in federal court . . . then a

district court must remand the claim to state court").

## IV.    Conclusion

The Court holds that Thompson lacks Article III standing to maintain his lawsuit in federal court.  Consequently, this Court is powerless to adjudicate the instant dispute, and remands this case to the Circuit Court of St. Louis County, Missouri for further proceedings. The Court directs the Clerk of Court to mail a certified copy of this order of remand to the clerk of the state court.  The Court also denies Genesco's [22] Motion for Judgment on the Pleadings, as well as the other various pending motions, docs. 24, 34–38, as moot.  A separate order of remand accompanies this memorandum and order.

So ordered this 8th day of January 2024.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE